IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| SHIRLEY RADABUAGH )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>CLAY TURNER REALTY GROUP )<br>)<br>Defendant. ) | 1:20-cv-00058-JRH-BKE |

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF HER
ELECTION OF STATUTORY DAMAGES**

Plaintiff Shirley Radabaugh ("Plaintiff"), via counsel, respectfully submits this reply in further support of her election of statutory damages under 17 U.S.C. §504(c).

In opposition to Plaintiff's declaration, dated July 7, 2021, in which Plaintiff set forth a basis for her recovery of statutory damages, Defendant Clay Turner Realty Group, LLC ("Defendant") concedes that Plaintiff's claim qualifies for statutory damages because the photograph at issue (the "Photograph") was published on April 21, 2020, subsequent to the effective date of the 245 Registration, which was registered on July 15, 2019. [Response, Dkt. # 37, p. 2

("Defendant does not dispute any assertions made in paragraphs one through six of the [Radabaugh] declaration")].

Defendant further concedes that, for purposes of the present analysis, the sales data obtained from the website www.fineartamerica.com is not a reliable indication of fair market value of the Photograph because such website only deals with the sales of prints. [Response, Dkt. # 37, p. 4 ("Defendant concedes there is a difference between hard copy prints (and subsequent usage) and that of digital media")].

Accordingly, the only two questions remaining in dispute are: (1) how to calculate a fair market value of Plaintiff's lost licensing fee; and (2) the correct multiple to apply to calculate enhanced damages under 17 U.S.C. §504(c).

**POINT I:   THE FAIR MARKET VALUE OF THE LOST LICENSING FEE IS $2315.00**

In the Digital Age, copyright infringement has reached epidemic proportions on-line. *See, e.g., United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111, 1132 (N.D. Cal. 2002) ("piracy of intellectual property has reached epidemic proportions" in internet age); Jessica Silbey et al., *Existential Copyright & Professional Photography*, 95 Notre Dame L. Rev. 263, 267 (2019) ("The current, online environment makes infringements too numerous to fight exhaustively."); Ben Depoorter, *If You Build It, They Will Come*, 33 Berkeley Tech. L.J. 711, 712 (2018) ("Copyright has a small claims problem . . . .  The

2

time, effort, and legal costs involved with litigation outweigh the resources available to many copyright holders; especially in light of the modest amounts at stake in most disputes.").

In her declaration, Plaintiff submitted evidence of a benchmark license fee derived from the website of leading stock photography agency Getty Images, Inc. ("Getty"). Federal courts have utilized evidence submitted from Getty Images' price calculator to assess the fair market value of a photograph, thereby showing that Getty provides a reliable methodology to calculate a reasonable benchmark licensing fee. *See, e.g., Smith v. Paul A. Castrucci, Architects, PLLC*, No. 20-CV-3176 (JGK), 2021 WL 930628, at *1 (S.D.N.Y. Mar. 11, 2021) (on default, finding similar photograph had a benchmark licensing fee of $1,680 based on evidence submitted from Getty Images, coupled with the plaintiff's sworn declaration); *Cuffaro v. Fashionisto LLC*, No. 19-CV-7265 (GBD) (KHP), 2020 WL 5077449, at *3 (S.D.N.Y. July 9, 2020), *report and recommendation adopted,* 2020 WL 5076826 (S.D.N.Y. Aug. 27, 2020) (on default judgment involving photograph with no licensing fee history, court credited evidence submitted from Getty Images to establish reasonable estimate of licensing fee for a similar photograph).

Here, Defendant does <u>not</u> contest that Getty's website is a reliable method for calculating the fair market value of the Photograph. Instead, it contests the

3

parameters that Plaintiff utilized to estimate a fair market value. Based on benchmark license fees charged by Getty, Plaintiff estimates that she would have been entitled to charge up to $2315.00 for use of the Photograph in the manner used by Defendant, for use in an editorial style article intended to indirectly promote a product or service for a period of 3 years in the United States in the industry of travel and tourism. [Radabaugh Declr. ¶ 11]. Defendant disagrees with these parameters, but none of its arguments should be credited.

First, Defendant argues that a hypothetical license would not have extended for three years because Defendant only displayed the Photograph on its website for "one to two months." [Dkt. No. 37, p. 6]. However, the only reason Defendant removed the Photograph after one to two months was because it got caught violating federal law. Had Defendant not been caught, the Photograph would have remained on the Website *indefinitely* because the Photograph was used by Defendant as a reference image to show Aiken, South Carolina; rather than to sell a specific piece of real estate for a limited period of time. Therefore, a three-year license is a conservative estimate.[1]

Second, Defendant argues that the $2315.00 estimate should be discarded because the Getty parameters were set to travel and tourism rather than

---

[1] Even if the Getty parameter were set to a one-year license, the rate is still $1770.00. See Exhibit B attached hereto.

4

property/real estate. However, as demonstrated by Exhibit A attached hereto, the license fee is the same ($2315.00) even where the property/real estate industry is selected.

Third, Defendant argues that the $2315.00 estimate includes use "across multiple digital platforms." [Dkt. No. 37, p. 5]. However, this assertion is erroneous. Plaintiff's estimate only includes a single page, as the express terms of Getty's advertorial license provide for "use in an editorial style article" (underline added); not use in multiple articles or platforms.

Fourth, Defendant argues that its infringing use was "corporate" or "promotional" rather than advertorial. However, Defendant was plainly using the Photograph to indirectly promote a product or service, namely its real estate services. Thus, it cannot be concluded that Defendant's use here was merely "corporate" or promotional." It was advertorial in nature, and therefore Plaintiff's Getty estimate of $2315.00 reflects the fair market value of what Defendant would have paid had it contacted Plaintiff to obtain a commercial license.

**POINT II:  A MULTIPLE OF FIVE TIMES PLAINTIFF'S LOST LICENSE FEE IS JUSTIFIED TO DETER INFRINGEMENT**

"In awarding damages, courts are guided by the principle that defendants who violate the copyright laws must be put on notice that it costs less to obey the copyright laws than to violate them." *New World Music Co. (LTD) v. Tampa Bay Downs, Inc.*, No. 8:07CV398-T-33TBM, 2009 WL 35184, at *11 (M.D. Fla. Jan.

6, 2009) (internal quotation and citation omitted). District courts have "considerable discretion in determining the appropriate amount of damages." *Joe Hand Promotions, Inc. v. McBroom*, No. 5:09-CV-276 (CAR), 2009 WL 5031580, at *4 (M.D. Ga. Dec. 15, 2009) (citation omitted); *see also Cable/Home,* 902 F.2d at 852 (holding that district courts have "wide latitude" in determining statutory damages).

"Courts sometimes award enhanced damages for willful violations as a multiple of the statutory damage award, typically treble damages, . . . ." *Zuffa, LLC v. Nguyen*, No. 2:20-CV-14051, 2020 WL 6449316, at *4 (S.D. Fla. July 27, 2020).

"In keeping with the principle of awarding statutory damages to deter wrongful conduct, courts often award damages based on some multiple of unpaid licensing fees." *New World Music Co. (LTD)*, 2009 WL 35184, at *11. "Awards of two to three times what the infringer would have paid for licensing fees are common." *Id.* (citing *Hickory Grove,* 855 F.2d at 383 (finding that the district court's award of approximately three times the cost of a properly purchased license was appropriate to deter future violations); *M.L.E. Music Sony/ATV Tunes, LLC v. Julie Ann's, Inc,* 2008 WL 2358979, at *5 (M.D. Fla. June 9, 2008) (awarding three times the amount of unpaid licensing fees in statutory damages); *Nick–O–Val Music Co., Inc.,* 656 F.Supp. 826, 829 (M.D. Fla. 1987) (awarding $50,000 in damages where defendants saved approximately $22,000 in licensing fees); *Blue*

*Seas Music, Inc. v. Fitness Surveys, Inc.*, 831 F.Supp. 863, 866 (N.D.Ga.1993) (awarding almost four times the unpaid licensing fees in statutory damages); *U.S. Songs, Inc. v. Downside Lenox, Inc.*, 771 F.Supp. 1220, 1229 (N.D. Ga. 1991) (awarding $7,500 in damages where unpaid licensing fees totaled approximately $2,300).

Here, Defendant offers blanket statements that its infringing use was "innocent", even though it operates in an industry where copyright law is prevalent. *See, e,g., Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172 (2d Cir. 1983) (finding that a newspaper willfully infringed because, as a publisher of a copyrighted newspaper, defendant should have known that its unauthorized reproduction of plaintiff's copyrighted article constituted copyright infringement); *Van Der Zee v. Greenidge*, 2006 WL 44020, *2 (S.D.N.Y. Jan. 6, 2006) ("As the defendants are in the book publishing business and in a position to repeat the unauthorized reproduction of copyrighted material, there is deterrent value in assessing [statutory] damages against defendants."); *EMI Entertainment World, Inc. v. Karen Records, Inc.*, 806 F.Supp.2d 697, 703 (S.D.N.Y. 2011) *vacated on grounds of standing,* 2013 WL 2480212 (S.D.N.Y. June 10, 2013) (noting that "other courts in this district have inferred willful infringement from a defendant's ownership of copyrights and experience in an industry heavily regulated by copyright law.").

Accordingly, the Court is justified in applying an appropriate multiple of five to the lost licensing fee, thereby yielding a total award in statutory damages of $11,575.00

This the 3rd day of August, 2021.

                                                Respectfully submitted,

                                                CARSON LAW GROUP, PLLC

                                                */s/Dorsey R. Carson, Jr.*
Dorsey R. Carson, Jr. (GA Bar No. 940300)
2870 Peachtree Road, NW
#915-3234
Atlanta, GA 30305
Telephone:  601-351-9831
Facsimile: b601-510-9056
Email: dcarson@thecarsonlawgroup.com

*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was served on August 3, 2021 via CM/ECF on all counsel of record as follows:

>Kristen Turner Jones, Esq.
>Turner Jones Legal, LLC
>Post Office Box 1703
>Lincoln, GA 30817-8703
>Email: turnerjoneslegal@gmail.com
>
>*Counsel for Defendant*

This the 3rd day of August 3, 2021.

>>*/s/Dorsey R. Carson, Jr.*
>>OF COUNSEL